A Superior Court jury convicted the defendant of one count of larceny of property valued over $250. The property in question was a large but unspecified amount of cash secreted at the North Andover home of the defendant's mother and stepfather (parental home).[1] On appeal, the defendant claims error in the introduction in evidence of the transcript of a deposition of the defendant from a bankruptcy proceeding (transcript). We affirm.
Background. The stepfather ran a retail business in New Hampshire. That business generated large amounts of cash that the stepfather hid inside a duffle bag in a taped, cardboard box in a closet at the parental home. He did not know exactly how much cash he had hidden there, although he estimated it to be between $300,000 and $600,000.
The stepfather and the mother spent the 2013-2014 winter season in Florida, returning home to Massachusetts at the beginning of May of 2014. The house had been well-secured while they were away. After she returned, the mother checked the box in the closet. Finding the box still taped shut and nothing seemingly amiss, the mother did not open the box or investigate further. When the mother eventually opened the box in October of 2014, she found the cash missing, replaced by blank copy paper.
Meanwhile, the defendant's girl friend began spending lavishly on airfare, luxury hotels, and entertainment -- among other items -- for the two of them. In May of 2014, the defendant and her girl friend abruptly moved to California by car, and continued such spending along the way, opting, for example, to stay at the Ritz Carlton in Denver on their journey. Such profligate spending habits continued after the couple settled in California. Bank records showed that over the course of little more than a year, the girl friend deposited a total of over $250,000 into her bank account, and withdrew almost the same amount. From all appearances, the scale of the couple's spending grossly exceeded the available means of both of them. Pursuant to a search warrant, approximately $130,000 in cash was found in the apartment shared by the defendant and the girl friend.
It was undisputed that the defendant had access to the parental home while the mother and stepfather were in Florida, and that she used such access on various occasions. On one such occasion, April 27, 2014, a surveillance camera at the parental household recorded the defendant carrying "a rather large trash bag with something in it" out to her car. In pretrial statements made at the bankruptcy deposition, the defendant claimed that the bag she had been seen carrying contained spoiled food that she had removed from the mother's and stepfather's freezer on the first floor. However, a handyman who came that same day to the parental home to fix a problem there testified that he observed the defendant that day carrying a black bag down the stairs from the second floor.
At trial, the principal defense was that the stepfather falsely had accused the defendant because he was sexually obsessed with her and angry about her having rebuffed sexual advances that he had made (advances that the stepfather essentially admitted in his own trial testimony). The defendant also claimed that the money that had been spent after she began her move to California came from the girl friend's savings and an inheritance that the girl friend had received.
In July of 2015, the defendant filed for bankruptcy protection. Asserting status as a creditor, the stepfather participated in that proceeding. His lawyer deposed the defendant in that context, and the deposition unsurprisingly delved into the defendant's finances in detail. At trial, the stepfather's lawyer testified about that deposition, and the full transcript was admitted without objection.
Discussion. Because the defendant raised no objection to the admission of the transcript, our review is limited to whether its admission caused a substantial risk of a miscarriage of justice.[2] See Commonwealth v. Best, 50 Mass. App. Ct. 722, 725 (2001). For the reasons that follow, we discern no such risk.
As a preliminary matter, we note that a great deal of the transcript actually provided potential benefits to the defendant. Specifically, the admission of the transcript allowed the defendant the opportunity directly to deny stealing the money, to provide an alternative explanation of where the money that was spent came from, and to provide a theory of why the stepfather and mother might falsely accuse her (all while reserving the question of whether she herself should testify until after the Commonwealth had finished presenting its case).[3] Although some of the defendant's statements included in the transcript (such as her denial of the theft) perhaps were inadmissible, the admission of them inured to the defendant's benefit.
To be sure, some of the defendant's statements included in the transcript were damaging to her. A good example is her statement that because she claimed to have used the black bag to empty spoiled food from the first floor freezer, there was no reason for her to have had the bag on the second floor. But such statements would have been admissible as admissions. See Mass. G. Evid. § 801(d)(2) (2018).
The defendant is at great pains to identify portions of the transcript that were both inadmissible and harmful to her, and she is left to argue at the margins. For example, the transcript revealed some substance from electronic mail messages (e-mails) that the mother had sent to her, and the defendant contends that such statements should have been excluded (as embedded hearsay) and that they hurt her (by painting her in a bad light). But any such harm was marginal at best, especially where the mother's e-mails tend to paint a sympathetic portrait of the defendant as someone who may be under the influence of an abusive partner. In the end, the defendant is unable to demonstrate that any improper admission of portions of the transcript caused potential prejudice to her that rose to the level of creating a substantial risk of a miscarriage of justice. See Best, 50 Mass. App. Ct. at 725.
The defendant's argument fares no better recast as an argument that her trial counsel was constitutionally ineffective for failing to object to the wholesale admission of the transcript. A claim of ineffective assistance raised on direct appeal is "strongly disfavor[ed]" and will be sustained only where its merits are plain on the record. Commonwealth v. Zinser, 446 Mass. 807, 811 (2006). That is particularly true where, as here, the admission of the transcript had obvious potential benefits for the defendant. Without an affidavit from trial counsel, we cannot say that the failure to object to the admission of the transcript was not a strategic choice, and such a strategic decision cannot support a claim of ineffective assistance unless that choice was "manifestly unreasonable when made." Commonwealth v. Sena, 441 Mass. 822, 825-826 (2004). Moreover, the harm to the defendant from any improperly admitted material in the deposition transcript was so marginal that the defendant cannot demonstrate that she was deprived of a "substantial ground of defence," a prerequisite for making out a claim of ineffective assistance. Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
Judgment affirmed.

The jury acquitted the defendant of a second count of larceny of property valued over $250 that was based on the alleged theft of certain jewelry (a diamond ring and a diamond encrusted watch).

In part, the defendant argues that the judge abused his discretion in allowing the transcript to be admitted. However, where the defendant raised no objection, and has not shown that the judge had a duty to consider the transcript's admissibility sua sponte, the alleged error cannot properly be characterized as the judge's abusing discretion that he never was called upon to exercise.

The transcript also provided the defendant direct benefit with regard to the separate larceny count on which she was acquitted. She testified at the deposition that the stepfather had given her the two pieces of jewelry that were the subject of that count.